UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DALE BRENT ADAMS,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES CENTRAL INTELLIGENCE AGENCY *et al.*,**<br><br>Defendants. | Case No. 20-cv-377 (TNM) |

## MEMORANDUM ORDER

Dale Brent Adams requested 17 categories of records about himself and Central Intelligence Agency policy under the Freedom of Information Act (FOIA) and the Privacy Act. The CIA responded, but withheld certain information under FOIA and Privacy Act exemptions. Proceeding *pro* se, Adams challenges the adequacy of the search and the CIA's withholdings. The CIA's motion for summary judgment is now ripe.[1] The Court will grant in part and deny in part the CIA's motion.

### I.

Adams requested:

1. A list of all FOIA requests the CIA provided in 1986;
2. Information about investigations the CIA opened about people on that list, including Adams;
3. A copy of documents the CIA provided to Adams in 1986 under FOIA;

---

[1] Adams also filed what the Court construes as a Motion to Take Judicial Notice. *See* Mot. to Take Judicial Notice, ECF No. 41. The Motion asks the Court to take notice of certain propositions in caselaw. The Court grants in part the motion insofar as Adams asks the Court to rely on caselaw in reaching a decision. As much as Adams asks the Court to take judicial notice of certain arguments, *see, e.g.*, *id.* ¶ 13, 15–16, the Court considers them here.

4. A copy of CIA policy or legal opinions that applied in 1986 about the agency's authority to investigate criminals;
5. A copy of Adams' mail that the CIA received or intercepted;
6. A copy of CIA policy in 1986 about retaliation against people who exercise First Amendment rights or submit FOIA requests;
7. Any data the CIA collected about Adams attending university;
8. A copy of information the CIA collected about Adams' correspondent Sally Brown;
9. A document stating the first year the CIA began to investigate Adams;
10. Information about categories, classifications, organizations, movements, or activities to which the CIA accused Adams of belonging;
11. A copy of any foreign intelligence surveillance court orders, applications, directives, or authorizations about Adams;
12. A copy of any 1986 policy about the CIA's ability to investigate a U.S. citizen for filing a FOIA request;
13. A copy of any 2017 policy about the CIA's ability to investigate a U.S. citizen for filing a FOIA request;
14. Any information the CIA has obtained about Adams;
15. Any data the CIA has about Adams' work history;
16. A date stamped copy of this FOIA request; and
17. A copy of any Executive branch materials that the CIA is using to deny Adams' FOIA request.

*See* Am. Compl. Ex. D, ECF No. 15-1. The CIA acknowledged Adams' request about a week later. *See* Defs.' Mot. for Summ. J. (Defs.' MSJ) at 4, ECF No. 33; Decl. of Vanna Blaine ¶ 6 (Blaine Decl.), ECF No. 33-1. A year later, the CIA sent Adams an estimated completion date.

Unsatisfied, Adams sued seeking injunctive relief. *See* Compl., ECF No. 1; Am. Compl., ECF No. 15.[2] Two months later, Adams waived his request for "[a]ny and all information you have attempted or succeeded in obtaining about Dale Adams" (item number 14). Blaine Decl. ¶

---

[2] In his Amended Complaint, Adams also alleges that he asked the CIA to amend any false information about him within CIA records. *See* Am. Compl. ¶ 16. He also claims the CIA shared information about him without his consent. *Id.* ¶ 18–19. The parties have since agreed that "[t]his case concerns Plaintiff's June 2018 Freedom of Information Act ("FOIA") request." Joint Status Rep. at 1, ECF No. 31.

13; Defs.' MSJ Ex. D, ECF No. 33-2.  The CIA sent an interim response soon after and a final response five months later.  *Id.* ¶ 14–15.

In its interim response, the CIA released seven documents to Adams.  Blaine Decl. ¶ 14; Defs.' MSJ Ex. E (CIA interim response letter).  Two contained redactions under FOIA Exemptions 3 and 6, *see* 5 U.S.C. § 552(b), and Privacy Act exemption (j)(1), *see* 5 U.S.C. § 552a.  *See id.*  In its final response, the CIA released 19 more documents to Adams.  Blaine Decl. ¶ 15; Defs.' MSJ Ex. F (CIA final response letter).  Nine contained redactions under FOIA Exemptions 1 and 3.  *See id.*  Later, the CIA "clarified its response," identifying which requests had responsive records.  Blaine Decl. ¶ 16; Defs.' MSJ Ex. G (CIA clarification letter).  The CIA also refused to confirm or deny the existence of information related to eight of Adams' requests if they "seek records that would reveal a classified association between the CIA and the subject, if any exist."  Defs.' MSJ Ex. G (citing Executive Order 13526 § 3.6(a)).

The CIA now moves for summary judgment.  *See* Defs.' MSJ.  Adams maintains that the CIA's search was inadequate and its withholdings inappropriate.  *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. ¶¶ 2, 5–6, 14–17 (Pl.'s Resp.), ECF No. 37; Pl.'s Mot. to Take Judicial Notice, ECF No. 41 ¶¶ 17–20.  The CIA's motion for summary judgment is ripe for decision.[3]

## II.

To prevail on a motion for summary judgment, a party must show that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  The non-moving party may defeat summary judgment by showing that a genuine dispute exists about a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A dispute is "genuine" if a reasonable factfinder could find for the non-moving party; a fact is "material" if it affects the outcome of the

---

[3] The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And the Court draws inferences "in the light most favorable to the requester." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008). The agency must show that its search and withholdings comply with FOIA. *See ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). And an agency claiming an exemption must show the exemption's applicability to the withheld information. *Id.* The Court reviews these determinations de novo. *See* 5 U.S.C. § 552(a)(4)(B); *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

Sometimes "the fact of the existence or nonexistence of agency records" itself falls within a FOIA exemption. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). In that case, the agency may "refuse to confirm or deny the existence of records," *id.*, when admitting their existence would cause cognizable harm under FOIA, *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011). Agencies commonly provide so-called "*Glomar*" responses when "admission or denial could itself compromise national security." *Casey*, 656 F.2d at 730. When reviewing a *Glomar* response, courts "apply the general exemption review standards established in non-Glomar cases." *Knight First Amend. Inst. v. CIA*, 11 F.4th 810, 813 (D.C. Cir. 2021). The agency thus bears the burden to justify a *Glomar* response. *See* 5 U.S.C. § 552(a)(4)(B).

In FOIA cases, "the agency's identification or retrieval procedure" must be "genuinely in issue" to preclude summary judgment. *Weisberg v. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980). An agency may rely on affidavits to obtain summary judgment. *See Shapiro v. Dep't of Justice*, 893 F.3d 796, 799 (D.C. Cir. 2018). Such affidavits receive a presumption of

4

good faith. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). The affidavits must contain "reasonable specificity of detail" that is not contradicted by record evidence. *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).

A plaintiff must show that a genuine issue of material fact exists as to whether the agency has inappropriately withheld records. *Weisberg*, 627 F.2d at 368. Because Adams is *pro se*, the Court "liberally construe[s]" his filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III.

Adams challenges the adequacy of the CIA's search and its claimed FOIA exemptions.[4] *See* Pl.'s Resp. ¶¶ 2, 5–6, 14–17. An inadequate search for records is an improper withholding under FOIA. *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551–52 (D.C. Cir. 1994). The Court first analyzes the search and then the CIA's withholding justifications.

### A.

Adams challenges the adequacy of the CIA's search. The Court measures a FOIA search by the "appropriateness of [its] methods," not by its "fruits." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). The key question is "whether the search was reasonably calculated to discover the requested documents." *SafeCard Servs., Inc.*, 926 F.2d at 1201. The agency may establish the reasonableness of its search through "a reasonably detailed affidavit setting forth the search terms and the type of search performed." *Iturralde*, 315 F.3d at 313–14. Once the agency has done so, the plaintiff must produce "countervailing evidence" showing a genuine dispute of material fact about the search's

---

[4] Adams' opposition teems with his impressions of information purportedly contained in government documents. "[E]xcept in certain cases involving claims of privilege," however, "the identity of the requesting party" and his motives simply have "no bearing on the merits" of a FOIA claim. *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 496 (1994).

adequacy. *Id.*

The CIA's declaration details the scope of its searches. The CIA's main declarant describes the systems searched, why the relevant information is likely in those systems, and the personnel involved. *See* Blaine. Decl. ¶¶ 17–19. The declarant also describes the search methodology—including the search terms and the date range—for each of Adams' requests. *See id.* ¶¶ 20–29. And the declarant's statements stem from her personal knowledge and information made available to her in her official capacity as Information Review Officer for the CIA's Litigation Review Office. *See id.* ¶¶ 1, 4.

Adams must show a reason to doubt the good-faith presumption afforded to this declaration. *See SafeCard Servs.*, 926 F.2d at 1200. He does not. Instead, he argues the search was inadequate because the CIA did not produce certain records. *See* Pl.'s Resp. ¶¶ 2, 5–6, 14–17. But that is not the standard. *See Iturralde*, 315 F.3d at 315–16; *SafeCard Servs., Inc.*, 926 F.2d at 1201. Adams also contends that the CIA's declaration is not admissible. *See* Pl.'s Resp. ¶ 1. But it meets the demands of Rule 56. A declarant satisfies Rule 56(c)'s personal knowledge requirement in a FOIA case if she "attests to [her] personal knowledge of the procedures used in handling a FOIA request and [her] familiarity with the documents in question." *Barnard v. DHS*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (cleaned up).

Adams' speculation about missing documents presents no issue of material fact. The Court thus finds that the CIA conducted a reasonable search under the circumstances.[5]

---

[5] Adams also requests that the Court afford him *in camera* review of the CIA's documents. Pl.'s Resp. at 1, 10. Providing *in camera* review is appropriate where "the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency." *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). Neither circumstance is present here.

**B.**

Recall that the CIA redacted certain unclassified information under FOIA Exemptions 1, 3, and 6 in responding to Adams' request. And the CIA refused to confirm or deny the existence of any classified information under Exemptions 1 and 3—a *Glomar* response. The Court first addresses each exemption and then the *Glomar* response, mindful of the deference accorded the Executive Branch "in the context of national security concerns[.]" *Wolf*, 473 F.3d at 374.

**1.**

Here, the CIA contends that Exemptions 1 and 3 apply for national security reasons. Exemption 1 protects matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and are "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). To support its Exemption 1 response, the CIA invokes Executive Order 13,526. This Executive Order authorizes the classification of information pertaining to "intelligence activities (including covert action), intelligence sources or methods, or cryptology" if that information "could reasonably be expected" to damage national security. *See* Exec. Order No. 13,526 § 1.4(c), 75 Fed. Reg. 707, 708 (Dec. 29, 2009).

Exemption 3 applies to matters "specifically exempted from disclosure by [a] statute" other than FOIA. 5 U.S.C. § 552(b)(3). To support its Exemption 3 response, the CIA relies on the National Security Act of 1947 (NSA Act), 50 U.S.C. § 3024(i)(1), and the Central Intelligence Agency Act of 1949 (CIA Act), 50 U.S.C. § 3507. Both Acts qualify as Exemption 3 statutes. *See* S*ubh v. CIA*, 760 F. Supp. 2d 66, 70 (D.D.C. 2011) ("It is well established that these provisions of the NSA Act and the CIA Act are precisely the type of statutes

comprehended by [E]xemption 3." (cleaned up)).

The CIA's declarant adequately explains that the redacted information pertains to intelligence activities, methods, and "the nature and details of classified relationships." Blaine Decl. ¶¶ 38–40. She also reasonably explains how the disclosure of such information could damage national security. *Id*. Thus, the redacted information qualifies for Exemption 1. She also attests that the CIA redacted "titles, names, identification numbers, functions, and organizational information related to CIA employees" under the CIA Act. *Id*. ¶ 51. This information is quintessential Exemption 3 material.

Adams suggests that certain withheld information is in the public domain. *See* Pl.'s Resp. ¶¶ 18–27. But he has not clearly identified any such information. Nor has he met his "initial burden of pointing to specific [officially acknowledged] information in the public domain that appears to duplicate" the withheld information. *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013). The CIA is therefore entitled to summary judgment on Exemptions 1 and 3 on the information redacted from the unclassified records.

FOIA Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The CIA invoked this exemption with Exemption 3 "to protect identifying information of CIA personnel." *See* Govt.'s MSJ Ex. G, ECF No. 33-2 (*Vaughn* Index); *see also* Govt.'s MSJ ¶¶ 64–68. Because the same redactions are proper under Exemption 3, the Court has "no need to consider Exemption 6 separately[.]" *Roth*, 642 F.3d at 1173.

## 2.

The CIA also provided a *Glomar* response to certain requests. Recall that "a *Glomar* response is valid if the fact of the existence or nonexistence of agency records falls within a

FOIA exemption." *PETA v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (cleaned up). An agency may issue a *Glomar* response when answering a FOIA inquiry would cause cognizable harm under a FOIA exemption. *Elec. Priv. Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012). The agency may justify its *Glomar* responses with reasonably specific affidavits. *PETA*, 745 F.3d at 540. The affidavits must contain more than "merely conclusory statements" and "cannot be called into question by contradictory evidence in the record." *Id.*

Here, the CIA justifies its *Glomar* responses under FOIA Exemptions 1 and 3 and Privacy Act Exemption (j)(1). Blaine Decl. ¶ 32. The CIA provided *Glomar* responses for (a) request items 2 and 5, for which it conducted no searches, and (b) "certain types of additional records responsive to items 7-11 and 15," *id.*, for which it conducted searches, *see id.* ¶¶ 24, 26. The CIA's declarant attests that a non-*Glomar* response for these items "would reveal a classified and statutorily-protected fact within the meaning of" FOIA Exemptions 1 and 3 and Privacy Act Exemption (j)(1). Blaine Decl. ¶ 32.

But the CIA attested that it searched for records responsive to request items 7, 8, 9, and 15. *See id.* ¶¶ 24, 26. And it confirmed it possesses responsive documents. *See id.* ¶ 18, 20. So the CIA has acknowledged the "fact" of those records' existence. *See ACLU*, 710 F.3d at 427 ("[T]he plaintiff can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is purportedly exempt information that a *Glomar* response is designed to protect."). More, the CIA's treatment of items 10 and 11 is unclear. Thus, the CIA is entitled to summary judgment only as to items 2 and 5 for its *Glomar* responses.

As is typical in FOIA litigation, the Court will permit the CIA to "properly support" the remaining withholdings, Fed. R. Civ. P. 56(e), under FOIA exemptions. *Cf. ACLU*, 710 F.3d at

9

432 (noting the "collapse of the CIA's *Glomar* response" and remanding the case to the district court "[t]o determine whether the contents—as distinguished from the existence—of the officially acknowledged records may be protected from disclosure by Exemptions 1 and 3"). The CIA should not, however, expect another chance to correctly handle this FOIA request.

### IV.

For these reasons, the Court will grant the CIA's Motion for Summary Judgment in part and deny it in part.

It is therefore

**ORDERED** that the CIA's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part without prejudice. The Motion is granted for the search for responsive records, the exemptions applied to certain unclassified material, and the *Glomar* response to request items 2 and 5. In all other respects, the Motion premised on the *Glomar* responses is denied. It is further

**ORDERED** that on or before **October 13, 2022**, the CIA shall supplement the record consistent with this opinion and, if appropriate, renew its Motion for Summary Judgment.

Dated: July 14, 2022                                    TREVOR N. McFADDEN
                                                         United States District Judge