## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DALE BRENT ADAMS**, | |
| Plaintiff, | |
| v. | No. 1:20-cv-00377 (TNM) |
| **CENTRAL INTELLIGENCE AGENCY**, *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION

Dale Brent Adams, proceeding *pro se*, sued the Central Intelligence Agency over a FOIA request for 17 categories of records about himself and CIA policy.  This Court upheld most of the CIA's withholdings under various exemptions but asked for supplemental information about the CIA's *Glomar* response for certain records.  The Court will now grant the CIA's renewed motion for summary judgment because it finds that the CIA has adequately clarified and justified its *Glomar* response.

### I.

The Court has described the facts here before.  *See Adams v. CIA*, No. 20-cv-377, 2022 WL 2752585 (D.D.C. July 14, 2022).  It briefly recounts a few that are relevant to the CIA's renewed motion for summary judgment.

Adams requested 17 categories of records, but only six remain at issue.  The CIA initially issued a *Glomar* response[1] for these documents, explaining that it could neither confirm nor deny their existence.  These categories are:

---

[1]  The phrase "*Glomar* response" derives from *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976), in which the CIA refused to confirm or deny the existence of records relating to the "Hughes Glomar Explorer," a ship allegedly deployed by the U.S. government to raise a sunken

- Category 7:  Any data the CIA collected about Adams attending university;
- Category 8:  A copy of information the CIA collected about Adams' correspondent Sally Brown;
- Category 9:  A document stating the first year the CIA began to investigate Adams;
- Category 10:  Information about categories, classifications, organizations, movements, or activities to which the CIA accused Adams of belonging;
- Category 11:  A copy of any foreign intelligence surveillance court orders, applications, directives, or authorizations about Adams; and
- Category 15:  Any data the CIA has about Adams' work history.

The Court initially found the CIA's *Glomar* response wanting because the CIA both stated that it had searched for some of these records and produced them to Adams, while also issuing a *Glomar* response.  *See Adams*, 2022 WL 2752585, at \*5; *compare* Decl. of Vanna Blaine (Blaine Decl.), ECF No. 33-1 ¶¶ 24–26 (stating the CIA searched for records in categories 7, 8, 9, and 15, and found some), *with id.* ¶ 32 (stating the CIA can neither confirm nor deny the existence of some of those same records).  The Court held that the CIA had thus acknowledged the "fact" of those records' existence—the same information *Glomar* is designed to protect.  *See id.*

The CIA has now supplemented its motion for summary judgment as to these six categories of records and its renewed motion is ripe.  *See* Def.'s Renewed Mot. for Summ. J. (Def. MSJ), ECF No. 46.  This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## II.

To prevail on a motion for summary judgment, a party must show that "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  The non-moving party may

---

Soviet submarine for analysis by the U.S. military and intelligence community.  *See Roth v. DOJ*, 642 F.3d 675, 1171 (D.C. Cir. 2017).

defeat summary judgment by showing that a genuine dispute exists about a material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is "genuine" if a reasonable factfinder could rule for the non-moving party; a fact is "material" if it affects the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And the Court draws inferences "in the light most favorable to the requester." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

Because Adams proceeds *pro se*, the Court "liberally construe[s]" his filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That accommodation does not, however, allow him "to ignore the Federal Rules of Civil Procedure." *Oviedo v. WMATA*, 948 F.3d 386, 397 (D.C. Cir. 2020); *see also Raven v. Sajet*, 334 F. Supp. 3d 22, 28 (D.D.C. 2018) (noting that for *pro se* plaintiffs, "the ultimate standard remains the same"), *aff'd,* 2019 WL 2562945 (D.C. Cir. May 17, 2019) (per curiam). Adams still must show that a genuine issue of material fact exists as to whether the agency has inappropriately withheld records. *See* Fed. R. Civ. P. 56(a).

FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008). Sometimes "the fact of the existence or nonexistence of agency records" itself falls within a FOIA exemption. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). In that case, the agency may "refuse to confirm or deny the existence of records" when admitting their existence would cause cognizable harm under FOIA. *Id*. Agencies commonly provide so-called "*Glomar*" responses when "admission or denial could itself compromise national security." *Mil. Audit Proj. v. Casey*, 656 F.2d 724, 730 (D.C. Cir. 1981).

When reviewing a *Glomar* response, courts "apply the general exemption review

standards established in non-Glomar cases." *Knight First Amend. Inst. v. CIA*, 11 F.4th 810, 813

(D.C. Cir. 2021). The agency thus bears the burden to justify a *Glomar* response. *See* 5 U.S.C.

§ 552(a)(4)(B).

The *Glomar* doctrine has a few exceptions. As relevant here, an agency cannot issue a

*Glomar* response if it has officially acknowledged the existence of records in the public domain.

*See ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013). This exception is narrow. "Prior

disclosure of similar information does not suffice; instead, the *specific* information sought by the

plaintiff must already be in the public domain by official disclosure." *Wolf*, 473 F.3d at 378.

And the plaintiff must point to such information. *See id.*

### III.

The relevance of Adams' arguments are difficult to apprehend, but at bottom he contends

that the CIA is not entitled to summary judgment.[2] *See generally* Pl.'s Opp'n, ECF No. 49. The

Court therefore analyzes whether the CIA properly issued its *Glomar* responses, as that is the

sole remaining issue.

In its renewed motion, the CIA argues that it properly issued a *Glomar* response for six

categories of records. *See generally* Def. MSJ. For the first time, it clarifies that it manages two

types of databases: the first holding documents that "would reveal an open, unclassified, or

---

[2] Along with his Opposition, Adams filed a document entitled "Plaintiff's Affidavit of Good
Faith Reasons to Pursue This Action and Genuine Disputes of Material Facts." *See* Pl.'s Aff.,
ECF No. 49-1. This filing violates Local Rule 7(h) because each paragraph is not supported by a
record citation. *See* LCvR 7(h). Indeed, much of the affidavit appears to be based on Adams'
personal knowledge, and it does not respond to the substance of the CIA's separately numbered
paragraphs. *Compare* Def. Stmt. of Undisputed Material Facts, ECF No. 46, *with* Pl.'s Aff. The
Court therefore finds the CIA's Statement of Undisputed Material Facts admitted. *See SEC v.
Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000). Even if Adams had complied with Local
Rule 7(h), the Court also finds that he identifies no genuine dispute of material fact to preclude
summary judgment as to the CIA's *Glomar* response.

officially acknowledged relationship to the CIA" (unclassified databases), and the second

containing documents that "would reveal a classified or unacknowledged connection to the CIA"

(classified databases).  *Id.* at 5, 7.  The CIA now explains that it searched for categories 7–11 and

15 *only* in the unclassified databases.  *See* Def. MSJ at 5; *see also* Second Suppl. Decl. of Vanna

Blaine (2d Blaine Decl.) ¶¶ 3–4, ECF No. 46-1.  And it found responsive documents, releasing

five in full and two in part.  *See* Def. MSJ at 5.  While it searched for these categories in

*un*classified databases, the CIA did not search any classified databases.  *See id.* at 6–10.  And its

*Glomar* response pertains only to the existence or nonexistence of records in those classified

databases.  *See id.*  But for the CIA's failure to initially explain its two-database structure, this

second round of briefings would have likely been unnecessary.

Because the CIA justifies its *Glomar* responses under Exemptions 1 and 3, the Court

analyzes each in turn.  In doing so, the Court is mindful of the deference given to the Executive

Branch "in the context of national security concerns[.]"  *Wolf*, 473 F.3d at 374.

## A.

Exemption 1 protects matters that are "specifically authorized under criteria established

by an Executive order to be kept secret in the interest of national defense or foreign policy" and

are "in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  To

support its Exemption 1 response, the CIA invokes Executive Order 13,526.  This Executive

Order authorizes the classification of information pertaining to "intelligence activities (including

covert action), intelligence sources or methods, or cryptology" if that information "could

reasonably be expected" to damage national security.  *See* Exec. Order No. 13,526 § 1.4(c), 75

Fed. Reg. 707, 708 (Jan. 5, 2010).

The Court finds the CIA's renewed *Glomar* response sufficient.  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Wolf*, 473 F.3d at 374–75 (cleaned up).  The CIA contends that noting the existence or nonexistence of records in categories 7–11 and 15 "would reveal sensitive information about the CIA's intelligence interests, personnel, capabilities, authorities, and resources"—all of which Executive Order 13,526 protects from disclosure.  Def. MSJ at 7; Blaine 2d Decl. ¶¶ 5, 6–9.[3]  For example, the CIA explained that confirming or denying that it has records responsive to categories 10 or 11 "would reveal CIA intelligence targets and strategies" because "[i]f the CIA had no responsive documents on those items, it would reveal what [the] CIA isn't focused on, and could expose a vulnerability."  Blaine 2d Decl. ¶ 7.  On the other hand, acknowledging the existence of responsive records "would confirm CIA intelligence interests" which adversaries of our nation could use to anticipate agency sources and methods.  *Id.*  "[I]n the context of national security concerns," this Court affords "substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record."  *Wolf*, 473 F.3d at 374.  And the CIA's *Glomar* response here resembles others that courts have upheld.  *See, e.g.*, *id.* at 375–77; *Schaerr v. DOJ*, 435 F. Supp. 3d 99, 113 (D.D.C. 2020).

The Court finds that the CIA properly issued a *Glomar* response under Exemption 1 as to categories 7–11 and 15.

**B.**

Exemption 3 applies to matters "specifically exempted from disclosure by [a] statute" other than FOIA.  5 U.S.C. § 552(b)(3).  To support its Exemption 3 response, the CIA relies on

---

[3]  The CIA's declarant holds "original classification authority" and has performed classification review of CIA documents for years.  Blaine Decl. ¶¶ 2–3.

the National Security Act of 1947 (NSA Act), 50 U.S.C. § 3024(i)(1), and the Central

Intelligence Agency Act of 1949 (CIA Act), 50 U.S.C. § 3507.  Both Acts qualify as Exemption

3 statutes.  *See Subh v. CIA*, 760 F. Supp. 2d 66, 70 (D.D.C. 2011).  And the "Supreme Court

gives even greater deference to CIA assertions of harm to intelligence sources and methods

under the National Security Act."  *Wolf*, 473 F.3d at 377.

Although the Court could rule for the CIA based on its Exemption 1 explanation alone, it

also holds that the agency satisfies Exemption 3.  The CIA's declarant "identifies the statute[s]

that exclude[] the information and establishes that the information falls within the statute[s']

scope."  *Schaerr*, 435 F. Supp. 3d at 114; *see also Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir.

1978) (explaining that in Exemption 3 cases "the sole issue for decision is the existence of a

relevant statute and the inclusion of withheld material within that statute's coverage").  The

CIA's declarant explains that divulging the existence or nonexistence of records responsive to

categories 7–11 and 15 would reveal a classified relationship harmful to intelligence sources and

methods that could jeopardize national security.  *See, e.g.*, Blaine Decl. ¶¶ 50–52; 2d Blaine

Decl. ¶ 8–9.  Under Exemption 3, that is enough.  *Accord Wolf*, 473 F.3d at 377–78.  The CIA

"need not make a specific showing of potential harm to national security in order to justify

withholding information . . . because Congress has already, in enacting the statute[s], decided

that disclosure of [NSA and CIA] activities is potentially harmful."  *Elec. Priv. Info. Ctr. v. NSA*,

678 F.3d 926, 931 (D.C. Cir. 2012).  The CIA has met its burden to justify its Exemption 3

withholdings.

## C.

Adams gestures at an exception to *Glomar*—that the CIA has waived its right to issue

such a response because it has officially acknowledged that the information exists.  *See, e.g.*,

Pl.'s Opp'n ¶ 40.  The CIA replies that Adams fails to meet the heavy burden of proving that the official acknowledgment exception applies.  *See* Def.'s Reply at 6–7, ECF No. 52.

The Court agrees with the CIA.  Adams may compel disclosure of information "even over an agency's otherwise valid exemption claim" if the CIA has "officially acknowledged" the information.  *ACLU*, 710 F.3d at 426–27 (explaining the "official acknowledgement" or "public domain" exception).  When faced with a *Glomar* response, the official acknowledgment exception "is triggered when the prior disclosure establishes the existence (or not) of records responsive to the FOIA request, regardless whether the contents of the records have been disclosed."  *Marino v. DEA*, 685 F.3d 1076, 1081 (D.C. Cir. 2012) (cleaned up).

But a "strict test applies to claims of official disclosure."  *Moore v. CIA*, 666 F.3d 1330, 1331 (D.C. Cir. 2011).  To overcome an agency's *Glomar* response using this exception, Adams "must pinpoint an agency record that both matches [his] request and has been publicly and officially acknowledged by the agency."  *Id.* at 1333–34.  He does not do so.  Instead, Adams merely contends that "[m]any of the documents in the Vaughn Index . . . were previously released to Congress leaders and the United States Senate Select Committee on Intelligence."  Pl.'s Opp'n ¶ 40.

Such a conclusory statement is not enough to overcome the CIA's *Glomar* response.  *Cf. Moore*, 666 F.3d at 1334.  Especially in the "highly sensitive context . . . of national security . . . an agency's official acknowledgement cannot be based on speculation, no matter how widespread."  *Id.*  As the D.C. Circuit has recognized, the "insistence on exactitude" to meet this

exception "recognizes the Government's vital interest in information relating to national security and foreign affairs." *Wolf*, 473 F.3d at 378.

Adams levies a few other counterarguments to the CIA's motion for summary judgment. None are persuasive. He contends that the CIA altered or destroyed documents in violation of Executive Order 13,526 and federal law. *See, e.g.*, Pl.'s Opp'n ¶¶ 19, 22, 29. But Adams offers no evidence in support of these aggressive claims. *See generally id.* And, in any event, his conclusory allegations do not overcome the CIA's valid *Glomar* response. Adams also claims that the CIA's declarations and its *Vaughn* index "are not accurate admissible evidence" and argues that he presented evidence to rebut their adequacy. *Id.* ¶¶ 11–12. The Court has already found the CIA's search for responsive records adequate and its declaration admissible. *See Adams*, 2022 WL 2752585, at *3. And Adams provides no reason to upset the good-faith presumption afforded to the CIA's supplemental declaration. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

\* \* \*

Adams argues in passing that *in camera* review of the withheld documents is warranted. *See* Pl.'s Opp'n at 1. This Court has discretion to order *in camera* review and may do so if it finds the declarations and *Vaughn* Index conclusory, too vague, or if evidence of agency bad faith exists. *See, e.g.*, *Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996). Because the Court finds that the CIA meets its burdens under FOIA through affidavits and Adams provides no evidence of agency bad faith, "*in camera* review is neither necessary nor appropriate." *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 23 (D.C. Cir. 1984).[4]

---

[4] The Court also finds that the CIA meets its burden to show foreseeable harm. Though Adams references a case holding that an agency did not meet its foreseeable harm burden, he does not

**IV**.

For these reasons, the Court will grant the CIA's Renewed Motion for Summary Judgment.  A separate Order will issue today.

Dated: February 6, 2023                    _____
                                                          TREVOR N. McFADDEN
                                                          United States District Judge

---

meaningfully argue that the CIA fails to do so here.  *See* Pl.'s Opp'n ¶ 56.  And as this Court has recognized, "an agency's burden under the foreseeable harm requirement may be more easily met when invoking other privileges and exemptions for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated."  *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021).  The CIA adequately explains the risk of foreseeable harm from disclosure of its own intelligence targets and strategies under Exemptions 1 and 3.  *See, e.g.*, Blaine Decl. ¶¶ 45–47; 2d Blaine Decl. ¶¶ 7–8.